UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES A. CARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-01150-TWP-MJD |
| | ) |
| GRAYSTONE MORTGAGE | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION TO STAY

This matter is before the Court on Defendant Graystone Mortgage Corporation's ("Graystone") Motion to Stay ([Filing No. 59](#)). Graystone requests a stay of this action pending resolution of related lawsuits in Florida federal and state courts. Plaintiff James A. Card ("Mr. Card") objects to the motion. For the reasons set forth below, Graystone's Motion is **GRANTED**.

## I. BACKGROUND

Mr. Card initiated this action alleging that Defendants CSC Credit Services, Inc. and Graystone violated various provisions of the Fair Credit Reporting Act ("FCRA") ([Filing No. 1](#)). Specifically, this action relates to the inaccurate reporting by an installment account on Mr. Card's credit file and consumer reports. Mr. Card alleges that Bahamas Sales Associate, LLC ("BSA") issued a promissory note to him in connection with the purchase of real estate in the Bahamas (the "Promissory Note"). Thereafter, BSA's parent company, Ginn Financial Services, LLC ("Ginn"), contracted with Graystone for access to a computer service that allowed Ginn to service the Promissory Note. At the request of Ginn, Graystone reported information about Mr. Card and the Promissory Note to the national consumer reporting agencies under Graystone's subscriber number instead of having Ginn obtain its own subscriber number for the reporting. In essence,

Graystone furnished the information about Mr. Card's Promissory Note under the direction of Ginn to the national consumer reporting agencies. Under its arrangement with Ginn, Graystone also furnished information to the national consumer reporting agencies about other similar promissory notes held by other individuals and entities who purchased similar properties in the Bahamas.

A number of lawsuits ensued surrounding the Promissory Note and the other promissory notes. Mr. Card's Promissory Note is the subject of two different lawsuits pending in Florida courts. One of the lawsuits is pending in the United States District Court for the Middle District of Florida (the "Florida federal court action"). The other is pending in the Circuit Court of the Seventh Judicial Circuit in Flagler County, Florida (the "Florida state court action"). In those actions, Mr. Card contends that the Promissory Note was fraudulently obtained and is invalid and unenforceable. The current action differs from the Florida cases by naming different defendants and asserting claims under the FCRA. Graystone seeks a stay of this action pending the outcome of the Florida lawsuits.

## II. LEGAL STANDARD

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

If a parallel action is before another federal district court, "the general principle is to avoid duplicative litigation." *Id.* at 817. A stay eliminates concerns of duplicative litigation. *Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004).

The approach for concurrent federal-state jurisdiction is more limited than wholly federal concurrent jurisdiction because of the federal court's obligation to exercise its original jurisdiction. *Colo. River*, 424 U.S. at 817–18. As noted in *Colorado River*, the principles governing concurrent federal-state jurisdiction "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks and citation omitted).

To determine whether a stay is appropriate in the context of concurrent federal-state jurisdiction, the Court must first determine whether the state and federal court actions are parallel. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

> For a state court case to be parallel to a federal court case under the *Colorado River* doctrine, there must be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. The cases need not be identical to fulfill the requirement of parallelism, but the court must examine whether substantially the same parties are contemporaneously litigating substantially the same issues in another forum. The court should also examine whether the cases raise the same legal allegations or arise from the same set of facts.

*Id.* at 1018–19. "If the actions are not parallel, the *Colorado River* doctrine does not apply and the court need not address the second part of the analysis." *Id.* at 1018. However, if the federal and state court actions are parallel, "the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Id.* The factors are:

1) whether the state has assumed jurisdiction over property;

2) the inconvenience of the federal forum;

3) the desirability of avoiding piecemeal litigation;

4) the order in which jurisdiction was obtained by the concurrent forums;

5) the source of governing law, state or federal;

6) the adequacy of state-court action to protect the plaintiff's rights;

3

7) the relative progress of state and federal proceedings;

8) the presence or absence of concurrent jurisdiction;

9) the availability of removal; and

10) the vexatious or contrived nature of the federal claim.

*Id.*

### III. DISCUSSION

Graystone contends that this case should be stayed pending the outcome of both the Florida federal court action and the Florida state court action. First, Graystone argues that the concurrent federal actions would result in duplicative litigation. Next, Graystone argues that the litigation before this Court and the litigation before the Florida state court are parallel and that application of the *Colorado River* factors weigh in favor of a stay. In response, Mr. Card objects to a stay and argues that Graystone is not a party to any of the Florida cases, the claims differ, and resolution of the Florida case will not impact the claims against Graystone. The Court will address each contention in turn.

**A.    Is the Florida Federal Court Action Duplicative?**

When federal courts are faced with the prospect of concurrent proceedings, the overarching concern is to avoid duplicative litigation. *Colo. River*, 424 U.S. at 817. "Duplicative litigation is best avoided by staying rather than dismissing the proceedings of all suits filed after the first, because dismissal could preclude a party from having their day in court." *Oric Holding LP v. Am. Innovative Mfg. Indus.*, 2005 U.S. Dist. LEXIS 35746, at *4 (S.D. Ind. July 22, 2005). When considering whether federal actions are parallel, the parties and issues need only be substantially similar or functionally identical to issue a stay. *See In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1049–51 (N.D. Ill. 2012).

4

Mr. Card's claims in the Florida cases are asserted against various defendants, including BSA, the issuer of the Promissory Note, and BSA's parent company, Ginn, the servicer of the Promissory Note. Graystone is functionally equivalent to these defendants because Graystone furnished the information to the national consumer reporting agencies as a conduit of the computer system that Ginn used to service the Promissory Note. Graystone reported information to the national consumer reporting agencies based on the information it received from Ginn and under Ginn's direction. Essentially, Graystone is standing in Ginn's shoes in this litigation.

In *In re Groupon Derivative Litigation*, a derivative claim was asserted while there was a separate securities class action pending in another court. The court held that staying the litigation of the derivative claim until the securities class action was resolved would simplify the central issue in the derivative action because of the similarity of the issues in the two lawsuits. *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043.

The enforceability and validity of Mr. Card's Promissory Note is at issue in the Florida lawsuits. In his Complaint, Mr. Card asserts that the resolution of his indebtedness, *i.e.*, the enforceability of the Promissory Note, is an issue that "will ultimately determine the accuracy of the information being reported by Graystone regarding Plaintiff." ([Filing No. 1 at 11](Filing No. 1 at 11).) In his Response in Opposition to Graystone's Motion to Stay, Mr. Card argues that the enforceability of the Promissory Note is not at issue in this case because, here, the claim is based on Graystone's obligations under the FCRA. Although the FCRA claim is different from the contractual Promissory Note claims pending in the Florida courts, the validity of the Promissory Note is a central issue in determining if Graystone's reporting was accurate, and the facts significantly overlap in the actions. Because the parties and issues are substantially similar, a stay of this action would avoid duplicative litigation by this Court and the Florida federal court.

5

## B.  Is the Florida State Court Action Parallel?

In determining whether to issue a stay, this Court considers whether the Florida state court action is parallel to this action and, if so, the Court then considers the ten factors established in *Colorado River*.

"For a state court case to be parallel to a federal court case under the *Colorado River* doctrine, there must be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018.  The cases do not have to be identical to be parallel, but the court must decide "whether substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 1019 (internal quotation marks and citation omitted).  "[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action." *Clark*, 376 F.3d at 686–87.

In *Freed v. J.P. Morgan Chase Bank*, the Seventh Circuit affirmed the district court's stay of the federal litigation despite the assertion of a different claim against different defendants, differentiating the federal litigation from the concurrent state court litigation.  *Freed*, 756 F.3d at 1024.  In determining that the actions were parallel, the Seventh Circuit noted that "[t]he factual allegations and legal analyses in the cases largely overlap, and the issues will be resolved largely by referencing the same facts and evidence.  Therefore, the issues in the two cases, while not identical, are substantially the same." *Id.* at 1020.

Similar to *Freed*, this action is parallel to the Florida state court action because the Court cannot determine if Graystone inaccurately furnished information to the national consumer reporting agencies, thus subjecting it to FCRA liability, until the enforceability and validity of the Promissory Note has been determined.  Many of the facts and evidence will overlap from the state

6

court litigation, and the state court action may dispose of the federal claims. Although this case involves a different defendant than the Florida state court action, Graystone acted on behalf of and by agreement with the Florida state court defendants. The defendants share aligned interests in showing that the Promissory Note was valid and enforceable.

The Court finds that this action and the Florida state court action are parallel. Because the actions are parallel, the Court now turns to analyzing the actions under the ten *Colorado River* factors.

## C. The Ten Factors of *Colorado River*

In weighing the factors, the Court "is given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Freed*, 756 F.3d at 1021. The Court finds that nine factors weigh in favor of staying this litigation.

### 1. Whether the State has Assumed Jurisdiction Over Property

The Florida state court assumed jurisdiction over the Promissory Note when the Florida state court litigation was originally filed on May 6, 2011, more than two years before this action was initiated. While the contractual claims regarding the Promissory Note are not asserted here, the Promissory Note's enforceability and validity will affect the issues in this action. "[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colo. River*, 424 U.S. at 818 (citations omitted). This factor weighs in favor of staying this litigation until resolution of the Florida state court action.

### 2. The Inconvenience of the Federal Forum

This factor weighs in favor of staying this litigation because Mr. Card is a party to the Florida lawsuits that have been pending in Florida federal and state courts longer than this matter has been pending. Mr. Card chose to file the other actions in the Florida courts. The validity and

enforceability of the Promissory Note, along with many other similar promissory notes, will be interpreted applying Florida law. Many of the witnesses in the lawsuits are Florida residents. For these reasons, litigation in the Florida courts would be most convenient.

### 3. The Desirability of Avoiding Piecemeal Litigation

This factor turns on "concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Freed*, 756 F.3d at 1022 (internal quotation marks and citation omitted). Parallel litigation can result in inconsistent rulings, and inconsistent rulings can jeopardize the public's perception of justice. *Id.* When two courts oversee similar proceedings and the consideration of similar issues, evidence, and witnesses, it effectively duplicates the amount of judicial recourses required to reach a resolution. *Id.*

The Seventh Circuit noted that this type of redundancy weighs in favor of a stay. *Clark*, 376 F.3d at 687. In *Clark*, the state and federal court actions involved substantially the same parties litigating substantially the same issues arising from the same set of facts. The court held that staying the federal cases would conserve judicial resources and avoid the potential for inconsistent results. *Id.* Similarly, here, this factor weighs in favor of a stay because the Florida state court will determine a threshold issue, the enforceability and validity of the Promissory Note, for deciding whether Graystone furnished inaccurate information in its reporting. Further, Mr. Card is a plaintiff in all of the actions at issue and Graystone is functionally equivalent to BSA and Ginn, defendants in the Florida litigation. To avoid redundancy, inefficiency, and the potential for inconsistent rulings, staying this litigation is desirable.

### 4. The Order in which Jurisdiction was Obtained by Concurrent Forums

The Florida state court action was filed on May 6, 2011, more than two years before this action was initiated. In *Freed*, the Seventh Circuit held that a stay was appropriate where the state

8

court lawsuit was filed less than a year before the two federal court lawsuits, and it noted the *Lumen* case where filing a state court action only five months before the federal action favored a stay. *Freed*, 756 F.3d at 1022. Because Mr. Card filed the Florida state court action more than two years before this action, this factor weighs in favor of issuing a stay.

### 5. The Source of Governing Law, State or Federal

The Seventh Circuit noted that "a state court's expertise in applying its own law favors a *Colorado River* stay." *Id.* (quoting *Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir. 1988)). Mr. Card concedes that the Promissory Note is governed by Florida state law. He argues, however, that the claim before this Court deals only with the issue of Graystone's reporting under the FCRA and that Florida state law does not apply. While Florida state law will not control the FCRA claim in this action, it will affect the analysis of the accuracy of Graystone's reporting because the enforceability and validity of the Promissory Note will be an essential part of that analysis. Because Florida state law governs the analysis of a threshold issue, this factor weighs in favor of a stay.

### 6. The Adequacy of State-Court Action to Protect the Federal Plaintiff's Rights

The issuance of a stay, rather than dismissal, ensures that a federal plaintiff's rights are protected regardless of the outcome of the state court action because a stay allows the plaintiff to revive the federal litigation after the state court action is disposed. *Id.* at 1023. Here, Graystone requests a stay, not dismissal, of this litigation pending the outcome of the Florida actions. If the Florida litigation does not dispose of the issues in this litigation, Mr. Card's rights will be protected, and he will be able to proceed with this litigation. Therefore, this factor favors a stay.

9

### 7. The Relative Progress of State and Federal Proceedings

Graystone explains that "virtually no action has been taken to move this case forward with respect to the primary issues" and "[o]nly limited written discovery has been exchanged between the parties." ([Filing No. 60 at 13](#).) Dispositive motions have not yet been filed in this litigation, and the trial date was continued to allow further discovery. Instead of explaining the relative progress of the Florida state court action, Graystone simply asserts that the Florida action has been pending longer than this action. That argument simply repackages the "Order in which Jurisdiction was Obtained by Concurrent Forums" factor. From the Florida court's docket, it appears that little has occurred in the Florida state court action since the defendant moved to dismiss the plaintiffs' amended complaint, which was filed the beginning of 2012.[1] Because neither action has progressed much farther than the other, this factor does not weigh in favor of a stay.

### 8. The Presence or Absence of Concurrent Jurisdiction

The crux of Mr. Card's argument for opposing the stay is that the enforceability and validity of the Promissory Note has no bearing on the FCRA claim, and thus, the FCRA claim is solely governed by the jurisdiction of this Court. However, in his Complaint, Mr. Card asserts that "whether the Plaintiff is indebted on the Promissory Note" and "whether the Promissory Note was legally transferred" are issues to be determined by the Florida courts, and "resolution by the courts of these issues will ultimately determine the accuracy of the information being reported by Graystone regarding Plaintiff." ([Filing No. 1 at 10](#)–11.) In *Freed*, the Seventh Circuit held that, because resolution of a key fact in the state court was necessary to resolve the federal court claim, a stay was appropriate. *Freed*, 756 F.3d at 1023. Similarly here, as alleged in Mr. Card's

---

[1] The Court notes that the litigation pending in the Florida federal court has almost 230 docket entries, as recent as October 22, 2014, and that on September 19, 2014, the parties were ordered to "mediat[e] as soon as reasonably possible." While this supports staying this litigation pending resolution of the Florida federal court action, it does not factor into the analysis of staying this action in relation to the Florida state court action.

Complaint, the enforceability and validity of the Promissory Note is a key fact in determining the accuracy of Graystone's reporting, thus bearing on the FCRA claim. This factor favors a stay.

9.  **The Availability of Removal**

This factor "intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. The Florida state court action involves claims brought under Florida state law to resolve disputes about numerous promissory notes. The promissory notes have choice of law and venue provisions establishing Florida courts as the proper venue and Florida law as the governing law. The claims at issue there are state law claims, not federal claims. Thus, jurisdiction is proper in federal court only if diversity exists. The plaintiffs in the Florida state court action appear to have citizenship in Florida, New Jersey, Wisconsin, Pennsylvania, Indiana, Georgia, New York, North Carolina, South Carolina, Texas, Michigan, California, Ohio, Tennessee, and the Bahamas. The defendants in the Florida state court action appear to have citizenship in Florida, Georgia, and possibly Delaware. Without complete diversity, federal courts cannot exercise diversity jurisdiction over the state law claims pending in the Florida state court action. Therefore, removal of the Florida state court action would be improper under 28 U.S.C. § 1441. This factor favors a stay of the litigation.

10.  **The Vexatious or Contrived Nature of the Federal Claim**

The Seventh Circuit has explained that "this factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("finding that the federal suit could be considered contrived and vexatious when there was 'no reason why all claims and all parties could not have been, and still could not be, part of one suit'")). Mr. Card could have brought his FCRA claim against Graystone

in the Florida state court action. While the record in this Court does not suggest that this litigation is frivolous, this factor favors a stay of the litigation because Mr. Card could have brought his FCRA claim in the Florida state court action.

In sum, nine factors favor the issuance of a stay of this action pending resolution of the parallel Florida state court action.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Graystone's Motion to Stay this litigation ([Filing No. 59](#)) pending the resolution of the Florida lawsuits. Accordingly, the pending trial date is vacated and all pending deadlines are now stayed. The parties are **ORDERED** to notify the Court that the Florida lawsuits have been resolved within (14) days of such resolution or by August 30, 2015, whichever event is sooner.

**SO ORDERED.**

Date: 1/20/2015

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

G. John Cento
CENTO LAW LLC
cento@centolaw.com

John K. Nieset
CHRISTOVICH & KEARNEY LLP
jknieset@christovich.com

Kevin R. Tully
CHRISTOVICH & KEARNEY LLP
krtully@christovich.com